UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL N. JENKINS,<br>Plaintiff,<br>v.<br>DOUG BURGUM, et al.,<br>Defendants. | Civil Action No. 25-4489 (JDB) |

# MEMORANDUM OPINION

Congress enacted the Wild Free-Roaming Horses and Burros Act ("WHBA") to protect those animals. Plaintiff Michael N. Jenkins, proceeding pro se, alleges that defendants are funneling wild free-roaming horses and burros from government custody to slaughter pipelines in violation of the WHBA. But his amended complaint does not clearly allege that he suffers a particularized injury, so he fails to meet his threshold burden of establishing standing to sue. The Court will thus dismiss the amended complaint, without prejudice, for lack of subject-matter jurisdiction. Jenkins may file a second amended complaint within 30 days, but it must plead his particularized injury consistent with the analysis in this opinion.

## BACKGROUND

### I. Wild Free-Roaming Horses and Burros Act

Congress passed the WHBA in 1971 to protect "wild free-roaming horses and burros" from "capture, branding, harassment, or death." 16 U.S.C. § 1331, Pub. L. No. 92-195, § 1, 85 Stat. 649, 649.[1] The WHBA declares all wild free-roaming horses and burros "to be under the

[1] The WHBA defines wild free-roaming horses and burros as "all unbranded and unclaimed horses and burros on public lands of the United States." 16 U.S.C. § 1332(b).

jurisdiction of the Secretary for the purpose of management and protection." Id. § 1333(a).[2] And it directs the Secretary "to protect and manage wild free-roaming horses and burros as components of the public lands." Id.

The 1971 Act "proved almost too effective, as excess numbers of wild horses began to pose a threat to habitat conditions." Wyoming v. U.S. Dep't of Interior, 839 F.3d 938, 940 (10th Cir. 2016). Congress therefore amended the WHBA in 1978 to strike a balance between "protecting wild free-roaming horses and burros" and "facilitating the removal and disposal of excess wild free-roaming horses and burros." Friends of Animals v. U.S. Bureau of Land Mgmt., 167 F.4th 528, 531 (D.C. Cir. 2026) (citation modified). The amended WHBA gives the Secretary "some discretion in determining whether an overpopulation of horses exists and whether removal is necessary." Id.; see 16 U.S.C. § 1333(b)(2). When the Secretary determines "that an overpopulation exists on a given area of the public lands and that action is necessary to remove excess animals, he shall immediately remove excess animals from the range so as to achieve appropriate management levels." 16 U.S.C. § 1333(b)(2). The Secretary may remove excess animals by facilitating their adoption by "qualified individuals" who can provide "humane treatment and care" or by "destroy[ing]" them "in the most humane manner possible." Id. § 1333(b)(2)(A)–(B); see also id. § 1333(b)(2)(C). The WHBA also requires the Secretary to sell excess animals under certain circumstances. Id. § 1333(e).

## II. Procedural History

Proceeding pro se, Jenkins claims that defendants, officials in the Departments of Agriculture and the Interior, are handling excess wild free-roaming horses and burros in ways that

[2] "Secretary" refers to "the Secretary of the Interior when used in connection with public lands administered by him through the Bureau of Land Management and the Secretary of Agriculture in connection with public lands administered by him through the Forest Service." 16 U.S.C. § 1332(a).

violate the WHBA. Am. Compl [ECF No. 3].[3] Historically, Jenkins alleges, "the customary and authorized management of excess wild horses and burros involved: (a) removal from public lands; (b) holding in short-term or temporary facilities; (c) transfer to longer-term facilities for processing toward lawful adoption or sale"; and "(d) placement of unadopted/unsold animals in long-term holding facilities." Id. ¶ 12.[4] But "during the last quarter of 2024 and throughout 2025," an "abnormal and unprecedented change in the movement and handling of these animals [was] observed." Id. ¶ 13. Jenkins and animal-welfare groups "observed" that "[l]arge herds of [Bureau of Land Management ('BLM')] … Mustangs and Burros" were being put up "for sale with threat dates to ship to slaughter in multiple kill pens." Id. In December 2025 alone, "124 BLM Mustangs" were "shipped to slaughter from BLM holding facilities" "through kill buyers who have contracts to sell horses to slaughter houses in Mexico." Id. Since the inception of BLM's Adoption Incentive Program in 2019, which provides a "$1,000 cash incentive per adopted animal," "over 1,000 BLM wild horses, mustangs, and burros have been funneled to kill pens and slaughter auctions." Id. ¶¶ 17a–17b. Jenkins also alleges that BLM failed to create a wild horses and burros task force, in violation of the explanatory statement accompanying a 2022 appropriations law. Id. ¶ 12; see Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, § 4, 136 Stat. 49, 51; 168 Cong. Rec. H2477–78 (daily ed. Mar. 9, 2022) (statement of Rep. Rosa DeLauro).

Jenkins alleges that defendants' conduct causes him injury "in his capacity as a member of the public trust." Am. Compl. at 5–6; see also id. ¶ 16. He states that wild free-roaming horses and burros are "public property held in trust for the American people, including Jenkins as a

[3] Jenkins's allegations are not always clear. Because he is proceeding pro se, the Court construes the allegations liberally. See Redmond v. Fulwood, 859 F.3d 11, 13–14 (D.C. Cir. 2017).

[4] Jenkins filed his original complaint on December 23, 2025. He filed the operative amended complaint as a matter of course on January 5, 2026.

taxpayer and member of the public," and "[a]ll United States citizens are the beneficiaries of American Public Trusts." Id. ¶ 11.

Jenkins sues under the Administrative Procedure Act ("APA")[5] and several other statutes. Id. at 5–6. He claims that defendants have violated the WHBA and related regulations by "bypass[ing] required humane management processes" and engaging in "unauthorized conversion to private use or improper transfer." Id. at 5. He also asserts violations of 18 U.S.C. § 201, a criminal statute penalizing bribery of public officials; 18 U.S.C. § 641, a criminal provision punishing theft and conversion of public property; 18 U.S.C. § 1001, a criminal law that covers "knowingly and willfully" making "any materially false" statement "in any matter within the jurisdiction of the executive, legislative, or judicial branch" of the U.S. government; the Procurement Integrity Act, 41 U.S.C. §§ 2101–2107, which generally prohibits disclosure of certain information before the award of a federal agency procurement contract; and the Anti-Deficiency Act, 31 U.S.C. §§ 1341–1342, 1349–1351, 1511–1519, which normally forbids federal employees and officers from making an expenditure in excess of an appropriation. Am. Compl. at 5–6 & ¶ 9.[6] Jenkins seeks a wide range of relief, including compensatory damages, a declaratory judgment that defendants have violated federal law, injunctive relief prohibiting further unlawful disposal of wild horses and burros, an order prohibiting the destruction of any healthy BLM mustang or burro "on the range or in holding," and "[f]ines and jail time for Defendants." Id. at 6–7.

[5] Count Two of the amended complaint alleges that defendants have violated the WHBA. Am. Compl. at 5. But the WHBA lacks "a specific statutory review provision." Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt., 460 F.3d 13, 18 (D.C. Cir. 2006). So claims alleging agency violations of the WHBA are analyzed under the APA, which "provides a generic cause of action to '[a] person … adversely affected'" by "'final agency action for which there is no other adequate remedy in a court.'" Id. (first quoting 5 U.S.C. § 702; and then quoting 5 U.S.C. § 704).

[6] In his opposition to the motion to dismiss, Jenkins also invokes the Federal Property and Administrative Services Act, the Competition in Contracting Act, the Federal Acquisition Regulation, and Department of the Interior regulations. See Pl.'s Response to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") [ECF No. 7] at 5.

Defendants move to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. Fed. Defs.' Mot. to Dismiss [ECF No. 5]. They contend that Jenkins does not establish standing, that he fails to state an APA claim, and that the remaining statutes cited in his amended complaint do not provide a private right of action. Jenkins opposed, Pl.'s Opp'n, and the government replied, Fed. Defs.' Reply in Support of Mot. to Dismiss [ECF No. 10].

## DISCUSSION

Jenkins seeks relief for defendants' alleged mistreatment of wild free-roaming horses and burros, which Congress has described as "living symbols of the historic and pioneer spirit of the West." 16 U.S.C. § 1331. But his amended complaint fails at the outset because he does not clearly allege facts showing that he has standing to sue. More specifically, he does not allege that he suffers a particularized injury—an injury that affects him "in a personal and individual way," Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (citation modified), rather than a grievance shared "in some indefinite way in common with people generally," DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 344 (2006) (citation modified). None of his other filings in this case cures this pleading deficiency. Because Jenkins has not established standing, the Court lacks jurisdiction over the case. The Court thus will grant defendants' motion to dismiss for lack of subject-matter jurisdiction. But Jenkins may be able to allege facts supporting standing in an amended pleading. So the Court will dismiss the amended complaint without prejudice and grant Jenkins leave to file a second amended complaint within 30 days that addresses standing consistent with the analysis in this opinion.

### I. Standing

"Standing is a constitutional prerequisite to the exercise of [the Court's] jurisdiction." Advanced Energy United v. FERC, 185 F.4th 186, 208 (D.C. Cir. 2026) (citation modified). The

"irreducible constitutional minimum of standing consists of three elements": the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 578 U.S. at 338 (citation modified). "The plaintiff bears the burden of … establishing the elements of standing." Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." Spokeo, 578 U.S. at 338 (citation modified). In determining whether plaintiff has met this burden, the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting [plaintiff] the benefit of all reasonable inferences that can be derived from the facts alleged." Hall v. D.C. Bd. of Elections, 141 F.4th 200, 205 (D.C. Cir. 2025) (citation modified). The court may also "consider materials outside of the complaint." Ctr. for Biological Diversity v. U.S. Dep't of Interior, 144 F.4th 296, 303 (D.C. Cir. 2025) (citation modified). If the court determines that the plaintiff lacks standing, it must dismiss the action for lack of subject-matter jurisdiction. See Am. First Legal Found. v. Greer, 153 F.4th 1311, 1316 (D.C. Cir. 2025).

Injury in fact is "the first and foremost of standing's three elements." Spokeo, 578 U.S. at 338 (citation modified). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 339 (citation modified). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." Id. (citation modified). "An injury in fact must also be concrete," meaning the injury "must actually exist." Id. at 339–40 (citation modified). Finally, to seek forward-looking relief, the harm must be "ongoing or imminent." Animal Legal Def. Fund, Inc. v. Vilsack, 111 F.4th 1219, 1227 (D.C. Cir. 2024).

Where, as here, the plaintiff seeks not only damages but also declaratory and injunctive relief, "past injuries alone are insufficient to establish standing." Id. (citation modified).

Even construing the amended complaint liberally and keeping in mind his pro se status, the Court concludes that Jenkins does not clearly allege facts demonstrating that he suffers an injury in fact. Jenkins asserts that he has been injured as a "beneficiary" and "member" of the "public trust," of which "[a]ll United States citizens are … beneficiaries." Am. Compl. at 5–6 & ¶¶ 11, 16. These allegations do not suffice. "An injury is not particularized if it is undifferentiated and common to all members of the public." Comm. on Judiciary of U.S. House of Representatives v. McGahn, 968 F.3d 755, 767 (D.C. Cir. 2020) (citation modified). His injury as a beneficiary of the public trust is an undifferentiated harm shared by all U.S. citizens, and neither the amended complaint nor any other materials Jenkins has submitted in this case indicate that the injury is "specific to" him. Id. He thus fails to establish that he suffers a particularized injury.[7]

The closest Jenkins comes to demonstrating an injury in fact is his allegation that he "observed … [l]arge herds of" wild free-roaming horses and burros being put up for sale into the slaughter pipeline. Am. Compl. ¶ 13. The Supreme Court has stated that "the desire to … observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." Lujan v. Defenders of Wildlife, 504 U.S. 555, 562–63 (1992). The Court found it "plausible … to think that a person who observes … animals of a particular species in the very area of the world where that species is threatened by a federal decision is facing [perceptible] harm, since some animals that might have been the subject of his interest will no longer exist." Id. at 566–67. And there are "myriad cases recognizing individual plaintiffs' injury in fact based on

---

[7] The suggestion that Jenkins is harmed as a "taxpayer," Am. Compl. ¶ 11, fails to demonstrate standing for the same reason. "Standing has been rejected" where, as here, the alleged injury is "a grievance the taxpayer suffers in some indefinite way in common with people generally." DaimlerChrysler, 547 U.S. at 344 (citation modified).

affronts to their aesthetic interests in observing animals living in humane habitats." Animal Legal Def. Fund, Inc. v. Glickman, 154 F.3d 426, 437 (D.C. Cir. 1998); see Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 317 F.3d 334, 337 (D.C. Cir. 2003) ("[A]n injury in fact can be found when a defendant adversely affects a plaintiff's enjoyment of flora or fauna, which the plaintiff wishes to enjoy again upon the cessation of the defendant's actions."). But Jenkins does not allege that he has an aesthetic interest in observing wild free-roaming horses and burros living in humane environments on specific U.S. public lands or BLM holding facilities. Nor does he allege that defendants are adversely affecting this interest by removing animals from those lands or holding facilities and funneling them to slaughter auctions. Nor does he assert that he wishes to return to those lands or facilities and to observe horses and burros that are not at risk of allegedly unlawful removal and slaughtering. Absent allegations like these, the amended complaint fails to establish standing based on his observation of animals.

Other courts have addressed standing in cases alleging WHBA violations, and those decisions further illustrate the pleading deficiencies here. In cases denying motions to dismiss for lack of standing, the complaints clearly alleged concrete and particularized injuries caused by defendants' conduct. See, e.g., Carter Reservoir Mustangs, Inc. v. U.S. Dep't of Interior, Civ. A. No. 25-3252, 2026 WL 1970595, at *4 (E.D. Cal. July 7, 2026) (plaintiffs challenging BLM plan to remove wild horses from three herd management areas "plainly allege[] a desire to observe and document the Carter Mustangs that would be trampled upon by the execution of the" plan and "concretely assert that they plan to observe the Carter Mustangs in the future"); In Def. of Animals v. U.S. Dep't of Interior, 808 F. Supp. 2d 1254, 1261–62 (E.D. Cal. Apr. 20, 2011) (plaintiffs challenging defendants' "roundup of the wild horses and burros on the Twin Peaks [Herd Management Area]" allege that "their concrete and particularized injury-in-fact stems from their

diminished ability to interact with, view and enjoy wild horses and burros on Twin Peaks"); see also Am. Wild Horse Campaign v. Burgum, 768 F. Supp. 3d 1291, 1305 (D. Colo. 2025) (citation modified) (plaintiffs suing over BLM's Adoption Incentive Program maintain that "they suffered aesthetic injuries by observing first-hand the inhumane treatment these federally protected animals must endure as a direct result of" the Program). These types of clear allegations of injury in fact are absent from the complaint.

His allegations instead more closely resemble those that courts have deemed insufficient at the motion-to-dismiss stage in WHBA cases. See, e.g., Sorenson v. Bureau of Land Mgmt., Civ. A. No. 26-757, 2026 WL 1893652, at *3 (D. Nev. July 1, 2026) (citation modified) (plaintiff "alleges that he suffered an injury in his capacity as a member of the public trust" and "is a beneficiary of the public trust created by the WHBA as a taxpayer and member of the public"); Arcamone-Makinano v. Haaland, Civ. A. No. 22-621, 2022 WL 4585298, at *3 (D. Nev. Sept. 29, 2022) (plaintiffs challenging BLM's removal of wild horses from the Jackson Mountain Herd Management Area "do not demonstrate that they have any concrete intentions to return to the Jackson Mountains area" or "explain if or how the BLM's emergency [removal] has harmed their ability to visit the area and observe the remaining wild horses"); Jubic v. United States, Civ. A. No. 9-1842, 2009 WL 3094861, at *1 (D.D.C. Sept. 28, 2009) (plaintiff seeking to halt BLM's removal of wild horse herds from public lands in Nevada "does not allege a property interest in either the horses or the lands on which the herds have roamed, or the existence of any other interest in or harm she stands to suffer if the [BLM's] plan takes effect").

In short, Jenkins fails to adequately allege that he suffers a particularized injury caused by defendants' conduct, which is a prerequisite to establishing an injury in fact. He thus does not

meet his burden of demonstrating standing, so the Court must dismiss his amended complaint for lack of subject-matter jurisdiction.

Because the Court lacks jurisdiction, it does not resolve whether Jenkins states an APA claim based on defendants' alleged violations of the WHBA or whether the other statutes he invokes create a private right of action. See Brownback v. King, 592 U.S. 209, 218 (2021) (citation modified) ("Ordinarily, a court cannot issue a ruling on the merits when it has no jurisdiction because to do so is, by very definition, for a court to act ultra vires."); Viet. Veterans of Am. v. Shinseki, 599 F.3d 654, 658 (D.C. Cir. 2010) ("Whether or not plaintiffs stated a claim—whether they had a cause of action—goes to the merits of the case.").[8]

## II. Motion to Supplement and Leave to Amend

Jenkins filed a motion, which defendants oppose, for leave to amend under Federal Rule of Civil Procedure 15(a) "to reflect significant developments" regarding changes in defendants' "policies and procedures in the disposition of … wild horses and burros." Pl.'s Mot. for Leave to Amend ("Pl.'s Mot.") [ECF No. 8] at 2; see Fed. Defs.' Opp'n to Pl.'s Mot. for Leave to Amend [ECF No. 11].

As a threshold matter, the motion does not comply with Local Rule 15.1, which provides that a "motion for leave to file an amended pleading shall attach, as an exhibit, a copy of the proposed pleading as amended." The motion refers to an "attached Amended Complaint," Pl.'s

[8] The Court notes, however, that if Jenkins chooses to file a second amended complaint, see infra at 11–13, he likely could not state a claim under the three criminal-law provisions he cites in the amended complaint. The D.C. Circuit has held that two of those provisions—18 U.S.C. § 201 and 18 U.S.C. § 1001—do not create private rights of action. See Ray v. Proxmire, 581 F.2d 998, 1001 (D.C. Cir. 1978) (citation modified) (concluding that there is "no privately-enforceable right under" § 201 because it "is a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone"); Lee v. U.S. Agency for Int'l Dev., 859 F.3d 74, 78 (D.C. Cir. 2017) (holding that § 1001 "does not create a private cause of action"). The same conclusion is likely true of the third provision, 18 U.S.C. § 641. See Sorenson, 2026 WL 1893652, at *3 (collecting cases holding that § 641 does not provide a private right of action); Brooks v. U.S. Army 1st Info. Operations Command, Civ. A. No. 23-189, 2023 WL 1963891, at *1 (D.D.C. Feb. 10, 2023) ("[C]riminal statutes generally do not create a private right of action and, therefore, cannot be relied on by a civil plaintiff to state a claim for relief.").

Mot. at 6, but it does not attach an amended complaint. It instead includes a one-page statement of reasons why the Court should grant the motion, a two-page section titled "Findings of Fact and Conclusions of Law," a request for relief, and several pages of exhibits. Pl.'s Mot. The Court may deny the motion on that basis alone. See Ali v. Carnegie Inst. of Wash., 309 F.R.D. 77, 87 (D.D.C. 2015) (explaining that a pro se plaintiff's "request for leave to amend may be denied if a plaintiff fails to comply with Local Rule 15.1"). Mindful that Jenkins is proceeding pro se, the Court construes his filing as a motion to supplement the amended complaint under Federal Rule of Civil Procedure 15(d) with any additional factual material contained in the motion. See SAI v. Dep't of Homeland Sec., 149 F. Supp. 3d 99, 125–26 (D.D.C. 2015) ("To the extent Plaintiff seeks to add claims relating to events that occurred after the filing of his original complaint … the Court notes that his motion is better construed as a motion to file a supplemental pleading under [Rule] 15(d)" rather than a motion for leave to amend under Rule 15(a).).

The Court, however, denies the motion to supplement as futile. "A district court may deny a motion" to supplement a complaint "as futile if the proposed claim would not survive a motion to dismiss." Hettinga v. United States, 677 F.3d 471, 480 (D.C. Cir. 2012); see SAI, 149 F. Supp. 3d at 126. The motion does not address standing to sue, so an amended pleading containing the new allegations would not survive a motion to dismiss for lack of subject-matter jurisdiction.

But the Court will allow Jenkins to file a second amended complaint within 30 days that includes more robust allegations of standing consistent with the analysis in this opinion and that incorporates any other revisions Jenkins wishes to make. Even though granting his motion to supplement would be futile because it does not address standing, the Court cannot now say that Jenkins "could not allege additional facts that would cure the deficiencies in [his] complaint." Belizan v. Hershon, 434 F.3d 579, 584 (D.C. Cir. 2006). Nor is this a case involving "undue delay,

bad faith or dilatory motive" or "repeated failure to cure deficiencies by previous amendments." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citation modified).

If Jenkins chooses to file a second amended complaint within 30 days, he must "clearly allege facts demonstrating" that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 578 U.S. at 338 (citation modified). To establish an injury in fact, Jenkins must adequately allege that he "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 339 (citation modified). To demonstrate that the injury is particularized, he must clearly allege that the injury affects him "in a personal and individual way." Id. (citation modified). Merely saying that defendants' conduct harms him as a beneficiary or member of the public trust, as a U.S. citizen, or as a taxpayer will not suffice. Jenkins must instead clearly allege that the injury is "specific to" him. Comm. on Judiciary, 968 F.3d at 767. And if he chooses to seek declaratory or injunctive relief, he must clearly allege that the harm is "ongoing or imminent" and cannot rely on "past injuries alone." Animal Legal Def. Fund, 111 F.4th at 1227 (citation modified).

In addition to adequately alleging standing, the second amended complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation modified). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. To state a claim, moreover, the second amended complaint must seek relief under a federal statute that supplies a private right of action. See Detroit Int'l Bridge Co. v. Gov't of Canada, 133 F.

Supp. 3d 70, 88 (D.D.C. 2015) ("A plaintiff must have a private cause of action under federal law to pursue relief in federal court.").

## CONCLUSION

Jenkins does not meet his burden of establishing standing, and neither his motion to supplement nor his other filings in this case cure that pleading deficiency. So the Court will grant defendants' motion to dismiss, deny the motion to supplement, and dismiss the amended complaint without prejudice for lack of subject-matter jurisdiction. Jenkins may file a second amended complaint by not later than November 19, 2026—30 days from today—that addresses the pleading issues consistent with the analysis in this opinion. A separate Order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: October 20, 2026